Kent W. Plott (USB No. 5336)
Mark S. Middlemas (USB No. 9252)
Lundberg & Associates
3269 South Main Street, Suite 100
Salt Lake City, UT 84115
(801) 263-3400
(801) 263-6513 (fax)
ECFmailDistGroup@Lundbergfirm.com

Attorneys for Suntrust Mortgage, Inc.
L&A Case No. 11-17847

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 11-35932 WTT |
| Krystal Dawn Johnson, | (a Chapter 13 case) |
| Debtor. | Filed Electronically |

AMENDED MOTION OF SUNTRUST MORTGAGE, INC.
FOR TERMINATION OF THE AUTOMATIC STAY

(Oral Argument Requested)

Pursuant to 11 U.S.C. §362(d), Bankruptcy Rules 4001 and 9014 and Local Rules 4001-1

and 9013-1, Suntrust Mortgage, Inc. ("Creditor"), a secured creditor of the above-referenced

debtor, moves the Court to terminate the automatic stay and represents as follows:

1.      On November 3, 2011, the debtor filed a petition commencing a case under Chapter

13, Title 11, United States Code.

2.      On or about April 15, 2004, the debtor executed and delivered to Surety Title Agency, as trustee, for the benefit of Mortgage Electronic Registration Systems, Inc., as nominee for Lender and Lender's it's successors and assigns, as beneficiary, a certain Deed of Trust (the "Trust Deed") to secure the performance by the debtor of the obligations under a certain Trust Deed Note (the "Note") executed and delivered for valuable consideration to First Reliance Mortgage Corporation on or about April 15, 2004.  Copies of the Trust Deed and Note are attached as **Exhibits A** and **B**.

3.      Creditor acquired the beneficial interest in the Trust Deed and Note by an Assignment recorded October 10, 2011, a copy of which is attached as **Exhibit C**.

4.      The Trust Deed creates a valid security interest in the property described in the Trust Deed (the "Property") in favor of Creditor.

5.      The obligation evidenced by the Trust Deed and Note is delinquent in that, as of the date upon which the debtor's petition was filed, payments were delinquent.

6.      A Plan was submitted by the debtor pursuant to the provisions of Chapter 13, Title 11, United States Code.  The Plan provides for repayment of the delinquent amounts owing on the Note through the Plan and for current monthly payments to be made outside the Plan.

7.      The debtor became delinquent on post-petition payments for December 1, 2011 through February 1, 2012 and Creditor filed a Motion for Relief on February 23, 2012. The debtor paid the past due post-petition payments and the hearing was continued without date.

8.      Subsequent to filing this Chapter 13 petition, the debtor has again failed to pay the monthly payments due outside the Plan and is presently delinquent for the October 1, 2012 through January 1, 2013 post-petition payments to Creditor.

- 2 -

9.      The debtor has failed to provide Creditor with adequate protection of its interest in the Property.

10.     The debtor's failure to make the four (4) post-petition payments due to Creditor constitutes cause for terminating the automatic stay.

11.     The automatic stay provided under 11 U.S.C. §362(a) should be terminated as to Creditor, and its successors and assigns.  Once the stay is terminated, Creditor may proceed, pursuant to applicable non-bankruptcy law, to exercise all of its legal remedies and rights, including any right of assessment of reasonable fees and costs as provided by contract or statute, against the above-described property.  In the alternative, the debtor should be ordered to provide Creditor with adequate protection of its interest in the Property.

12.     Creditor further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.  Any such agreement shall be non-recourse unless included in a reaffirmation agreement.  Creditor further requests that it be allowed to contact the debtor via telephone or written correspondence to offer such an agreement.

13.     In the event the automatic stay is lifted, Creditor requests a finding that the notice requirements of Bankruptcy Rule 3002.1 are no longer applicable to Creditor, and its successors and

assigns, or the Chapter 13 trustee, but that such finding shall not alter any other right of notice to the

debtor or borrower under the terms of the lending agreements.

     DATED: January 9, 2013

               LUNDBERG & ASSOCIATES


               By _____/s/_____
               Mark S. Middlemas
               Attorneys for Creditor

Exhibit "A"

9037171
04/16/2004 04:50 PM **34.00**
Book - 8974 Pg - 6759-6771
**GARY W. OTT**
RECORDER, SALT LAKE COUNTY, UTAH
SURETY TITLE
BY: ZJM, DEPUTY - WI  13 P.

**WHEN RECORDED MAIL TO:**
**FIRST RELIANCE MORTGAGE**
**CORPORATION**
**7084 SOUTH 2300 EAST, SUITE 200**
**SALT LAKE CITY, UTAH 84121**
Attn.: SHIPPING DEPT./DOC. CONTROL
Prepared By:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**State of Utah**               # DEED OF TRUST          | FHA Case No. |

MIN
**MERS TELEPHONE: (888) 679-6377**

THIS DEED OF TRUST ("Security Instrument") is made on **April 15, 2004**. The Grantor is
**Krystal D. Hincks an unmarried woman**
("Borrower"). The trustee is **Surety Title Agency** ("Trustee"). The beneficiary is Mortgage Electronic Registration
Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and
assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of
P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FIRST RELIANCE MORTGAGE**
**CORPORATION**, ("Lender") is organized and existing under the laws of **the State of UTAH**, and has an address
of **7084 SOUTH 2300 EAST, SUITE 200, SALT LAKE CITY, UTAH 84121**. Borrower owes Lender the
principal sum of **Ninety Six Thousand Four Hundred Eighty Five And 00/100 Dollars (U.S. $ 96,485.00)**. This
debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **May 1, 2034**. This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements
under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the
Trustee, in trust, with power of sale, the following described property located in **SALT LAKE** County, Utah:

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

                              Page 1 of 10

                                                          Initials: _____

utfmertd

SEE ATTACHED EXHIBIT A

Property Tax ID Number: **21-02-153-038**
which has the address of **4314 South Abby Court**                                                    [Street]
**Taylorsville**                                        [City], Utah **84123** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98
                                                    Page 2 of 10

                                                                        Initials: _JW_____

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

   **3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

   First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

   Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

   Third, to interest due under the Note;

   Fourth, to amortization of the principal of the Note; and

   Fifth, to late charges due under the Note.

   **4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

   In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

Page 3 of 10

Initials: _____

**5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default  if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.  Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's  request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.  These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

Page 4 of 10

Initials: _____

Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

Initials: _____

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances**. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

Initials: _____

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**17.  Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower:  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18.  Foreclosure Procedure.  If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law.  After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 _et seq._) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

Initials: _____

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it.  Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box(es)].

[ ]  Condominium Rider              [ ]  Growing Equity Rider              [ ]  Other(s) [specify]
[X]  Planned Unit Development Rider   [ ]  Graduated Payment Rider

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

Page 8 of 10

Initials: _____

BK 8974 PG 6766

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____   (Seal)
                            Krystal D. Hincks                  -Borrower


_____     _____   (Seal)
                                                               -Borrower


_____     _____   (Seal)
                                                               -Borrower


_____     _____   (Seal)
                                                               -Borrower

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98
                            Page 9 of 10

STATE OF UTAH,                          *Salt Lake*  County ss:

The foregoing instrument was subscribed and sworn to and acknowledged before me this
_4-15-09_____ by

Krystal D. Hincks

My Commission Expires: _5.20.06_

_Margie Ludington_____
Notary Public    *Salt Lake*
Residing at: _____

```
Notary Public
MARGIE LUDINGTON
6707 South 1300 East
Salt Lake City, Utah 84121
My Commission Expires
May 20, 2006
State of Utah
```

FHA Utah Deed of Trust with MERS - 4/96
Amended 2/98

Page 10 of 10

Initials: _____

BK 8974 PG 6768

Loan No.: ████████

# PLANNED UNIT DEVELOPMENT RIDER

FHA Case No.

████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **15th** day of **April, 2004** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **FIRST RELIANCE MORTGAGE CORPORATION** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**4314 South Abby Court, Taylorsville, UTAH  84123**
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**Barriington Park**
[Name of Planned Unit Development]

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:  (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.  Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring

FHA Multistate PUD Rider - 10/95

Page 1 of 2

Initials: _JQ̸L̸_

usfpud

BK 8974 PG 6769

from a hazard.  In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Krystal D. Hincks            -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower

**FHA Multistate PUD Rider - 10/95**

Page 2 of 2

## EXHIBIT "A"

Lot 242, contained in BARRINGTON PARK II "F", a Planned Unit Development, as the same is filed in the plat recorded in Book 80-2 at Page 429 and the Declaration of Covenants and Restrictions of the BARRINGTON PARK PLANNED UNIT DEVELOPMENT recorded in Book 4634 at Page 977 as Entry No. 3074104 and as subsequent amendments and/or by laws thereto, recorded in Book 4643 at Page 718 as Entry No. 3081966 in Book 4881, Page 167 as Entry No. 3294018 in Book 5451 at Page 1592 as Entry No. 3880913 in Book 5451 at Page 1610 as Entry No. 3760915 in Book 5588, Page 2022 as Entry No. 3990432.

Together with limited common area designated 111-A as described in said plat and further provided for in said Declarations and Restrictions.

Together with a right and easement of use and enjoyment in and to the common areas as described in and amended for in said Declarations of Covenants and Restrictions.

Sidwell No. 21-02-153-038

Exhibit "B"

Multistate

**NOTE**

Loan No.

MIN

FHA Case No.

MERS TELEPHONE:  (888) 679-6377

April 15, 2004
[Date]

4314 South Abby Court, Taylorsville, UTAH  84123
[Property Address]

**1.    PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means **FIRST RELIANCE MORTGAGE CORPORATION**

and its successors and assigns.

**2.    BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Ninety Six Thousand Four Hundred Eighty Five And 00/100**

Dollars (U.S. $   96,485.00), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and One-Fourth** percent (**6.250%**) per year until the full amount of principal has been paid.

**3.    PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.    MANNER OF PAYMENT**

    **(A)    Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **June 1, 2004**. Any principal and interest remaining on the first day of **May, 2034** will be due on that date, which is called the "Maturity Date."

    **(B)    Place**

Payment shall be made at **7084 SOUTH 2300 EAST, SUITE 200, SALT LAKE CITY, UTAH  84121** or at such place as Lender may designate in writing by notice to Borrower.

    **(C)    Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $   594.07.  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

    **(D)    Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

**5.    BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.    BORROWER'S FAILURE TO PAY**

    **(A)    Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four  percent (**4.00%**) of the overdue amount of each payment.

    **(B)    Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C)    Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**FHA Multistate Fixed Rate Note - 10/95**

Initials  *KDH*

usfnote

**7.     WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
Krystal D. Hincks                -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


Pay to the order of:
Suntrust Mortgage, Inc., a VIRGINIA Corporation
Without Recourse
FIRST RELIANCE MORTGAGE CORPORATION

By: _____

Name and Title: _____
                     Cindy Angell
                     Loan Closer

FHA Multistate Fixed Rate Note - 10/95                    Page 2 of 2

Exhibit "C"

11257896
10/10/2011 12:12 PM $12.00
Book - 9956 Pg - 8159-8160
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
SUNTRUST MORTGAGE
1001 SEMMES AVE
RICHMOND VA 23224
BY: CDC, DEPUTY - MA 2 P.

Recording Requested By:
SUNTRUST MORTGAGE, INC.

When Recorded Return To:

Janet Elleby
SUNTRUST MORTGAGE, INC.
1001 SEMMES AVENUE
RVW 5003
RICHMOND, VA 23224

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Salt Lake, Utah**
**SELLER'S SERVICING #** ███████████HINCKS"

**MERS #:** ███████████████▊

Date of Assignment: September 20th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST RELIANCE
MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS at 1901 E VOORHEES STREET, SUITE C,
DANVILLE, IL 61834
Assignee: SUNTRUST MORTGAGE, INC. at 1001 SEMMES AVENUE, RVW 5003, RICHMOND, VA 23224

Executed By: KRYSTAL D. HINCKS AN UNMARRIED WOMAN To: FIRST RELIANCE MORTGAGE
CORPORATION
Date of Deed of Trust: 04/15/2004 Recorded: 04/16/2004 in Book/Reel/Liber: 8974 Page/Folio: 6759-6771 as
Instrument No.: 9037171 In the County of Salt Lake, State of Utah.

Assessor's/Tax ID No. 21-02-153-038-0000

Property Address: 4314 SOUTH ABBY COURT, TAYLORSVILLE, UT 84123

Legal:
SEE EXHIBIT A

Beginning at a point North 2609.34 feet and East 1386.0 feet from the Southwest corner of the Benjamin
Davis Donation Land Claim No. 45, in Township 17 South, Range 4 West of the Willamette Meridian,
thence East 208.0 feet, thence North 113.2 feet, thence West 208.0 feet, and thence South 113.2 feet to the
point of beginning, in Lane County, Oregon.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having
an original principal sum of $96,485.00 with interest, secured thereby, with all moneys now owing or that may
hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and
provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's
beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

███████████████████████████

BK 9956 PG 8159

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.  AS NOMINEE FOR FIRST RELIANCE
MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS
On September 20th, 2011

By:_____

_____
             Susan King
           Vice President
STATE OF Virginia
COUNTY OF Richmond (City)

On September 20th, 2011, before me, Vanessa I mole_____, a Notary Public in and for City
of Richmond in the State of Virginia, personally appeared  Sus~King_____, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires 930 /20 13

VANESSA I MOLE
NOTARY
PUBLIC
REG # 255270
MY COMMISSION
EXPIRES
9/30/2013
COMMONWEALTH OF VIRGINIA

(This area for notarial seal)